**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

MARYANNE JOY,

              Plaintiff(s),              **DECISION AND ORDER**

       v.                      08-CV-6244

COLDWATER CREEK, INCORPORATED,

              Defendant(s).

---

## Preliminary Statement

Plaintiff Maryanne Joy ("plaintiff" or Joy) commenced this action pursuant to 29 U.S.C. § 2617 claiming that her employer, defendant Coldwater Creek ( "CWC" or "defendant") interfered with her rights under the Family and Medical Leave Act ("FMLA") and retaliated against her for exercising her FMLA rights. <u>See</u> Complaint (Docket # 1). Defendant moves for summary judgment on both claims (Docket # 17). For the reasons set forth below, defendant's motion is granted.[1]

## Relevant Facts

Joy was employed by defendant as a Store Manager at defendant's Eastview Mall location in Victor, New York from September 15, 2003 until April 16, 2008. <u>See</u> Deposition Transcript of Maryanne Joy (hereinafter "Joy Deposition") annexed to Docket # 30 at pp. 13, 15. CWC is a nationwide retailer specializing in the

---

[1]On August 18, 2008, the parties consented to the dispositive jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). <u>See</u> Docket # 10.

sale of women's clothing, jewelry, accessories and gifts. Joy's job was designated a management position and her responsibilities included hiring, training and management of the Eastview store's sales team. Joy was also responsible with making sure she and her sales team complied with all CWC policies.

With two exceptions, plaintiff received positive evaluations of her work performance during her tenure with CWC. In 2006, Joy received two separate "Written Performance Warnings" from CWC management. The first, issued in May 2006, concerned (1) an inappropriate comment Joy made to a sales associate, (2) failing to hold leadership team meetings on a weekly basis and (3) failing to meet training deadlines. See Exhibit "D" annexed to Docket # 20. The second performance warning was issued in September 2006 and alleged various violations of CWC policy, including (1) "inappropriate coaching" of sales associates, (2) violating CWC policy by opening the store alone, (3) violating CWC policy by bringing her dog into the store, (4) violating CWC policy by entering and exiting through the backdoor, and (5) improperly terminating an employee without "partnering" with the District Manager. See Exhibit "E" annexed to Docket # 20. After the second performance warning was issued, CWC placed Joy on a "Performance Action Plan" which required immediate improvement. See Exhibit "F" annexed to Docket # 20. One corrective element of the plan was that when Joy was working she must be "on the floor" of her store

between 11:00 a.m. and 4:00 p.m.   Id.   Joy signed both the performance warnings and the corrective action plan and understood that if she did not remedy her performance issues further action, "including termination could always happen."   See Joy Deposition at p. 93.   Written performance reviews issued in 2007 and 2008 indicated that Joy was either meeting or exceeding CWC job performance standards.   See Exhibits "G" and "H" annexed to Docket # 30.

On February 28, 2008, CWC received an anonymous complaint on its employee "hotline" regarding the activities of a retail store manager in a New York location.   According to the anonymous employee, the store manager and assistant store manager were not present in the store during scheduled work hours.   The complaining employee suggested that CWC could verify the violation by randomly calling the store during regular work hours and asking to speak to the store manager.   According to the complaint, if the caller "is lucky her success rate [in speaking to the store manager] will be 30%."   See Exhibit "W" annexed to Docket # 20.   The complaining employee stated: "I believe that being paid when no service is rendered is stealing."   Id.

The following day, Joe Gravitt, CWC's Vice President of Retail Operations, instructed subordinates, including Laurie Denton, Regional Manager for defendant's East Region, to investigate the complaint.   Denton thought that the complaint could be related to

CWC's Eastview Mall store.  Id.  Lori Stansley, CWC's District
Manager for the store in which Joy worked had previously received
concerns from Karen Moss, an assistant store manager in Joy's
store, that Joy and another assistant store manager (Dedi Obenauf)
were leaving the store together for long periods of time.  See
Exhibit "X" annexed to Docket # 20.  That Joy was the subject of
the anonymous complaint was further confirmed on March 13, 2008
when Julie Hart, another sales associate who worked for Joy, called
Stansley to complain about Joy.  According to Hart, Joy and Obenauf
frequently left the store for extended "lunch breaks" during hours
when they were required to be in the store, gift cards purchased
with CWC funds were "missing" from the store safe and a sales
associate had quit because of the work environment in Joy's store.
See Declaration of Lori Stansley (hereinafter "Stansley Decl.")
(Docket # 22).

    Stansley also spoke again to Moss who, at Stansley's request,
sent Stansley a written summary of problems at the Eastview store.
See Exhibit "B" annexed to Stansley Decl.  Moss's list of concerns
about Joy included: (1) gift cards that were purchased with CWC
petty cash and customer relation funds were "missing" and some were
used by Joy for "personal purchases", (2) Joy and Obenauf leave the
store during work hours for extended periods on a daily basis
contrary to CWC policy, (3) Joy does not show up for work on time
and will "leave the store to do personal errands on company time",

(4) Joy "spends very little time on the sales floor", and (5) Joy and Obenauf frequently argue with each other "causing a very tense working environment for all employees."  Stansley continued her investigation of Joy and the Eastview store and on March 31, 2008 sent Denton a summary of what she had discovered.  <u>See</u> Exhibit "C" annexed to Stansley Decl.  That evening, Denton emailed Mickey Quinn, CWC's Vice President of Operations, for assistance in investigating the allegations about Joy, including using petty cash funds to purchase personal items and leaving the store during working hours to run personal errands.  <u>See</u> Exhibit "Z" annexed to Docket # 20.  Denton also reviewed CWC's time records for Joy and determined that (1) Joy was working "some funky shifts" and (2) contrary to CWC's policy Joy was "not clocking in or out for breaks."  <u>See</u> Exhibit "CC" annexed to Docket # 20.

Meanwhile, on March 17, 2008, Joy e-mailed Stansley to inform her that she had a medical test done and while she "did not get a definitive answer" her doctors "did not like what they saw."  Joy wrote she was going to have additional "blood work up for Cancer" and if needed she would "fill out a HIPPA [sic] form and get it to you so proper protocol is followed."  <u>See</u> Exhibit "Q" annexed to Docket # 30.  Joy stated: "This was the same run I had to go through last year.  I am hopeful that the blood work will come back negative as last year."  <u>Id.</u>  Although Joy did not mention the need for FMLA leave in her March 17th e-mail, in October 2007 she had

5

requested FMLA leave which was approved with "no difficulty."[2]  Joy Deposition at p. 71. Stansley responded to Joy's email on March 18, 2008 writing that she hopes "everything goes well" with Joy's medical tests.  See Exhibit "Q" annexed to Docket # 30.  On March 25, 2008, Joy had a doctor's visit and decided to schedule surgery for May 2008.  Sometime between March 25, 2008 and March 31, 2008 Joy told Stansley of the scheduled May surgery. See Exhibit "II" annexed to Docket # 20.  On April 1, 2008, Joy submitted a HIPAA medical authorization, a necessary step in applying for FMLA leave. Stansley was scheduled to be in the Eastview Mall store on April 2, 2008 and Joy testified that she knew she had to have the HIPAA release form filed so that Stansley "could discuss with me the time that I needed to take off."  When Joy met with Stansley on April 2, 2008, she told Stansley that the surgery was scheduled for May 5, 2008 and she would need six to eight weeks off from work. Although their meeting was short, Joy recalls that she thought it was a "positive visit."  Joy Deposition at p. 198.  According to Stansley, she "never challenged Joy's request for FMLA leave, nor did [she] have any issue, problem or concern with Joy's request for FMLA leave."  Stansley Decl. at ¶ 15.

Stansley's knowledge of Joy's pending FMLA leave request did

---

[2] Joy testified that her 2007 surgery was cancelled right before it was scheduled to occur as her doctors decided to "keep an eye on me rather than going to surgery yet."  Joy Deposition at p. 71.  Accordingly, she did not use her approved FMLA leave.

not stop her from completing her investigation of complaints regarding the Eastview Store.  On April 3, 2008, Stansley emailed Gary Carpenter, CWC's Director of Loss Prevention, with transaction information about Joy's use of CWC gift cards to make personal purchases, writing "I hope that you find I am wrong."  See Exhibit "DD" annexed to Docket # 20.

CWC's investigation of Joy culminated in a meeting Denton and Stansley had with Joy on April 16, 2008.  In advance of the meeting Denton asked Stansley to prepare a termination notice for Joy. Denton planned on discussing the findings of CWC's investigation with Joy and, if she admitted she was aware of the policies she had violated, terminating Joy's employment with CWC.  Denton Decl. at ¶ 6.  Stansley did not tell Denton that Joy had applied for FMLA leave.  Stansley Decl. at ¶ 7.  Denton avers that at the time she directed that a termination notice be prepared, "I was unaware that Joy had requested, or even considered taking FMLA leave."  Denton Decl. at ¶ 6.  Joy met with Denton and Stansley for approximately an hour during which time they discussed the various CWC policies that they believed Joy violated.  Joy Deposition at pp. 274-279. According to Denton and Stansley, the meeting did not go well for Joy as she admitted to violating CWC's gift card, scheduling, time and attendance and timekeeping policies.  See Denton Decl. at ¶ 8; Stansley Decl. at ¶ 9.  At the conclusion of the meeting Joy was terminated from her job with CWC.  According to Denton, she decided

to terminate Joy's employment "because she repeatedly and knowingly violated numerous CWC policies."   See Denton Decl. at ¶ 10.

On June 6, 2008, plaintiff commenced the instant lawsuit by filing a complaint alleging violations of the FMLA.   Plaintiff alleges that her termination was "causally related" to her application for FMLA leave because she was terminated "*15 days after she had given notice of his* [sic] *intent to take FMLA qualifying leave.*"   See Complaint (Docket # 1) at ¶ 21 (emphasis in original).   Plaintiff further alleges that CWC interfered with her FMLA rights by using her application to take FMLA leave "as a negative factor" in an employment action.

## Discussion

Summary Judgment Standard:   Summary judgment shall only be granted if the record demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).   A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   All inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought.   Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).   The burden of showing the absence of any issue of material fact rests with the moving party.   Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986).  While courts must be wary in granting summary judgment where an employer's intent is at issue, "[e]ven in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."  Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008); see Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000)(summary judgment motions in discrimination cases require "a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff")(citation and quotations omitted).

A.  Plaintiff's Retaliation Claim:  The FMLA prohibits an employer from retaliating against an employee "for having exercised or attempted to exercise FMLA rights," including FMLA leave. Retaliation claims brought pursuant to the FMLA are analyzed under the burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Potenza v. City of New York, 365 F.3d 165, 167-68 (2d Cir. 2004)(per curiam).  Thus, in order to establish a prima facie case of FMLA retaliation, Joy must establish that (1) she exercised her rights protected under the FMLA, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of

retaliatory intent.  <u>Id.</u> at 168.

"A plaintiff's burden to establish a *prima facie* case of discrimination is *de minimis*."  <u>Kerzer v. Kingly Mfg., Inc.</u>, 156 F.3d 396, 401 (2d Cir. 1998).  Although CWC argues that Joy has not met the second and fourth prongs of establishing a *prima facie* case, the merits of CWC's summary judgment motion ultimately turns on whether CWC's reasons for terminating Joy were pretextual. Accordingly, I assume for purposes of this motion that Joy has established a *prima facie* case of retaliation and turn to defendant's burden of putting forth legitimate, nondiscriminatory reasons and whether plaintiff has proffered sufficient evidence of pretext.  <u>See Roge v. NYP Holdings, Inc.</u>, 257 F.3d 164, 168 (2d Cir. 2001)(unnecessary to decide whether plaintiff established a *prima facie* case because defendant met its burden of putting forth legitimate, nondiscriminatory reasons and plaintiff failed to proffer sufficient evidence of pretext);  <u>Pellegrino v. County of Orange</u>, 313 F. Supp. 2d 303, 315 (S.D.N.Y. 2004)("I agree with an increasing number of courts in this Circuit that, on all but the rarest of motions for summary judgment, we should simply assume, for purposes of this motion only, that plaintiffs have established a prima facie case.");  <u>Lanahan v. Mut. Life Ins. Co. of N.Y.</u>, 15 F. Supp. 2d 381, 384 (S.D.N.Y. 1998)(Because it is the "rare case" in which a defendant will not have proffered a legitimate reason for the employment action, "it is simpler and more straightforward to

10

move directly to the ultimate question").

Having assumed Joy has made a *prima facie* case of FMLA retaliation, the burden shifts to CWC to provide a legitimate non-discriminatory reason for terminating plaintiff. See <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  At the second stage of the <u>McDonnell Douglas</u> framework it is not necessary to determine whether CWC's explanation is convincing.  Rather, the issue is only whether the defendant "has introduced evidence that, <u>taken as true</u>, would <u>permit</u> the conclusion that there was a nondiscriminatory reason." <u>Holcomb v. Iona Coll.</u>, 521 F.3d 130, 141 (2d Cir. 2008)(emphasis in original)(internal citation and quotation omitted).  CWC has clearly met its burden of production here as the record documents numerous company policies that CWC believed Joy knowingly and repeatedly violated.  See Denton Decl. at ¶ 8; Stansley Decl. at ¶ 9.  Taken as true, Joy's violation of these policies permit the conclusion that CWC had legitimate, non-retaliatory reasons for terminating her employment unrelated to her need for FMLA leave.

The final step of the <u>McDonnell Douglas</u> analysis requires the the plaintiff to show by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993).  An employer's reason for termination cannot be proved to be a pretext for discrimination "unless it is shown <u>both</u> that the reason was

false, <u>and</u> that discrimination was the real reason." <u>Id.</u> at 515.
In other words, once a defendant has met the burden of articulating
a legitimate, non-retaliatory reason for the challenged employment
decision, "the plaintiff must point to evidence that would be
sufficient to permit a rational factfinder to conclude that the
employer's explanation is merely a pretext for impermissible
retaliation." <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 721 (2d
Cir. 2002)(citation and quotation omitted); <u>see</u> <u>Cifra v. G.E. Co.</u>,
252 F.3d 205, 216 (2d Cir. 2001)(where the plaintiff has adduced
evidence sufficient to constitute a prima facie case, and the
employer has articulated a legitimate nonretaliatory reason for the
adverse action, the plaintiff must point to evidence that would be
sufficient to permit a rational factfinder to conclude that the
employer's explanation is merely a pretext for impermissible
retaliation). Accordingly, the Court must now turn to the crux of
Joy's retaliation claim: has Joy raised sufficient evidence upon
which a reasonable jury could conclude by a preponderance of the
evidence that CWC's decision to fire her was pretextual and that
the true reason behind her termination was her need to take FMLA
leave?

To support the claim that she was fired in retaliation for
needing FMLA leave rather than because of her violations of company
policy, Joy points primarily to the timing of her discharge.
"CWC's biggest mistake was terminating Joy 15 days after she
requested FMLA leave." <u>See</u> Plaintiff's Memorandum of Law annexed

to Docket # 30 at p. 11.  While it is undisputed that Joy was
terminated after she had made certain CWC employees aware that she
needed to take FMLA leave, it is also true that temporal proximity
alone is insufficient to satisfy plaintiff's burden to establish
evidence of pretext.  Monroe v. Xerox Corp., 664 F. Supp. 2d 235,
246 (W.D.N.Y. 2009); Bain v. Wal-Mart Stores, Inc., 585 F. Supp. 2d
449, 454 (W.D.N.Y. 2008)("It is well-settled that temporal
proximity alone is insufficient to overcome an employer's
legitimate, nondiscriminatory reason for terminating a plaintiff's
employment."); Thomas v. S.E.A.L. Sec., Inc., No. 04 Civ.
10248(JSR)(GWG), 2007 WL 2446264, at *14 (S.D.N.Y. Aug. 30,
2007)(temporal proximity may give rise to an inference of
discrimination, but without more is insufficient to establish
pretext); Montgomery v. Chertoff, No. 03 CV 5387(ENV)(JMA), 2007 WL
1233551, at *21 (E.D.N.Y. Apr. 25, 2007)("While the temporal
proximity of these events gives rise to an inference of retaliation
for the purposes of plaintiff's prima facie case, without more,
such temporal proximity is insufficient to satisfy her burden to
bring forward some evidence of pretext.").  Moreover, even
plaintiff's temporal proximity argument is not entirely persuasive.
While Joy was terminated after her need for FMLA leave was known,
the record is also clear that CWC received serious complaints about
Joy and began an investigation into those complaints well before
even Joy knew she would need to take FMLA leave.

    Aside from the timing of her termination, the evidence Joy

points to as evidence of pretext does little to meet her burden.
Indeed, Joy's proof of pretext is essentially an attack on the
nature of CWC's evidence in support of its decision to fire her.
Joy argues, *inter alia*, that CWC policies were unclear or subject
to differing interpretations, that she was never officially
notified or confronted with the policy violations, and that because
she never admitted to violating the policies the decision to fire
her was too severe and therefore must have been retaliatory.  See
Plaintiff's Local Rule 56.1(b) Counter Statement annexed to Docket
# 30 at ¶¶ 103-139.

There are several problems with Joy's "proof" of pretext.
First, while there may be an issue of fact as to whether Joy
actually admitted to violating CWC policies during the April 16
meeting that culminated in her termination, Joy has not presented
credible evidence that CWC's proffered reasons for her termination
were pretextual, let alone false.  Joy has submitted to the Court
her deposition testimony.  During her deposition, Joy did not
dispute that she (1) used employee relations and customer relations
funds to purchase store merchandise for herself (see Joy Deposition
at pp. 112, 149, 159-163); (2) took unauthorized absences from the
sales floor during the time period when she knew she was required
to be present (id. at pp. 96-99, 212-217); (3) failed to
consistently work the shifts required of a Store Manager (id. at
pp. 135, 245-255); (4) failed to consistently submit zone charts
(id. at pp. 222-224); (5) failed to notify her supervisors of

14

changes to weekly schedules (<u>id.</u> at p. 137); (6) failed to punch in and out for breaks (<u>id.</u> at pp. 167-68, 204-208); (7) used defendant's computer to access Internet dating websites (<u>id.</u> at pp. 266-267); (8) allowed other employees to use defendant's computer for on-line shopping (<u>id.</u> at pp. 266-268); and (9) engaged in loud arguments with subordinates that were overheard by other staff (<u>id.</u> at p. 225).  To be sure, plaintiff has offered reasons as to why she engaged in the conduct that CWC found to violate established company policy, but that is not evidence of pretext.  <u>Hardekopf v. Sid Wainer & Son</u>, No. 02 Civ. 3251(LAP), 2004 WL 2199502, at *7 (S.D.N.Y. Sept. 29, 2004)(evidence that employer failed to take into account plaintiff's alleged reasons for her deficient job performance is not proof of pretext); <u>Kennebrew v. New York City Hous. Auth.</u>, No. 01 CIV 1654(JSR)(AJP), 2002 WL 265120, at *16 (S.D.N.Y. Feb. 26, 2002)(plaintiff's disagreement with supervisor's perceptions of work performance, alone, are not enough to show that employer's proffered reason for terminating plaintiff was a pretext for discrimination); <u>see also</u> <u>Dister v. Cont'l Group, Inc.</u>, 859 F.2d 1108, 1116 (2d Cir. 1988)("Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons.").

Second, in determining whether evidence is suggestive of pretext, the Court evaluates an employer's intent "by reference to the decision-maker actually ordering the adverse employment

action." <u>Woodman v. WWOR-TV, Inc.</u>, 411 F.3d 69, 89 (2d Cir. 2005).
Here, Joy has not pointed to any proof in the record that Laurie
Denton, the individual who made the adverse employment decision,
even knew that Joy intended to seek FMLA leave.   In fact the
undisputed evidence is that at the time Denton directed that Joy's
termination notice be prepared Denton was "unaware that Joy had
requested, or even considered, taking FMLA leave." Denton Decl. at
¶ 6.[3]

    Finally, the evidence confirms that CWC was aggressively
pursuing their investigation of Joy well before plaintiff herself
even knew she was going to apply for FMLA leave.   Joy points to her
March 17, 2008 email to Stansley as notification to CWC of her need
for FMLA leave.   But by that time the anonymous hotline complaint
had been received by CWC, an investigation into the Eastview store
had been commenced and two subordinates of Joy at the Eastview
store (Moss and Hart) had notified Denton and Stansley of serious
violations of CWC policies by Joy, including missing gift cards
from the safe and leaving the store during periods of time she was
required to be present.   The anti-retaliation provisions of the
FMLA do not require an employer to suspend an investigation of
employee misconduct simply because the employee is contemplating

---

[3] Whether Denton knew of Joy's intent to take FMLA leave when
she met with Joy on April 16, 2008 is not part of the record. If
plaintiff deposed Denton or Stansley in an effort to develop facts
supporting pretext, she has not made those deposition transcripts
part of the record before the Court.

the need for FMLA leave.  See Jackson v. Nor Loch Manor Healthcare Facility, 297 F. Supp. 2d 633, 636 (W.D.N.Y. 2004)("Certainly, an employer is entitled to discharge an employee who fails to follow company rules."); Middleton v. Metro. Coll. of N.Y., 545 F. Supp. 2d 369, 376-77 (S.D.N.Y. 2008)(finding that plaintiff failed to produce sufficient evidence to create a genuine issue of material fact as to whether defendant's reason for her termination was merely a pretext for retaliation, where defendant proffered a "legitimate non-retaliatory reason for [plaintiff's] termination, namely her misconduct"); Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 429 (S.D.N.Y. 2004)("FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave.")(citation and quotations omitted).

In sum, Joy has not put forth sufficient evidence from which a reasonable fact-finder could conclude that CWC's legitimate reasons for terminating plaintiff were a pretext for unlawful retaliation.  See Holt v. KMI-Continental, Inc., 95 F.3d 123, 130-31 (2d Cir. 1996)(affirming grant of summary judgment on claim for retaliatory discharge where "[d]efendant came forward with several legitimate reasons for the decision to fire plaintiff," including complaints about her performance and her inability to take direction from supervisors, and plaintiff "put forth no evidence to show that defendant's asserted reasons for the [decision] were pretextual").  Accordingly, CWC's motion for

17

summary judgment as to Joy's retaliation claim under the FMLA is granted.

B. Plaintiff's Interference with FMLA rights Claim: To establish an "interference" claim under the FMLA Joy must demonstrate that: 1) she was an eligible employee under the FMLA; 2) CWC is an employer under the FMLA; 3) Joy was entitled to leave under the FMLA; 4) Joy gave notice to CWC of her intention to take leave; and 5) Joy was denied benefits to which she was entitled under the FMLA. See Garraway v. Solomon R. Guggenheim Found., 415 F. Supp. 2d 377, 382 (S.D.N.Y. 2006). Here, CWC contests Joy's establishment of the fifth element set forth above. As to this fifth element, that a defendant denied a plaintiff benefits to which he or she is entitled under the FMLA, the Second Circuit has held that "[a] plaintiff need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both. . . . No scheme shifting the burden of production back and forth is required." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 175-76 (2d Cir. 2006)(internal citations omitted).

As to establishing that the taking of FMLA leave was a "negative factor" in CWC's decision to terminate Joy's employment, plaintiff's arguments mirror those in support of her FMLA retaliation claim and they are equally unavailing on her

interference claim.   To survive summary judgment Joy must submit direct or circumstantial evidence that would allow a factfinder to conclude that CWC considered Joy's leave request as a "negative factor" in terminating her employment.   Joy has not submitted sufficient evidence to sustain her burden.   Rather, the record confirms that (1) the investigation about Joy's repeated violations of CWC work policies commenced well before Joy herself knew she needed FMLA leave; (2) co-workers of Joy had come forward and informed CWC management of serious violations of CWC policy by Joy before Joy announced her need for FMLA leave; (3) the investigation by CWC confirmed that Joy had in fact violated numerous CWC policies and (4) the decisionmaker who directed that a termination notice be drafted for Joy did so before she knew that Joy was going to exercise her right to FMLA leave.   In sum, the record overwhelmingly supports the conclusion that CWC's decision to fire Joy was based on factors wholly unrelated to whether she had requested FMLA leave.   See Lawson v. Walgreen Co., No. CV. 07-1884-AC, 2009 WL 742680, slip op. at *5 (D. Or. Mar. 20, 2009)("Where an employer can establish that they would have taken the same action even if the employee had not asserted their rights under FMLA, a claim for interference will not stand.").   For these reasons, CWC's motion for summary judgment as to Joy's FMLA interference claim is granted.

## Conclusion

Defendant's motion for summary judgment (Docket # 17) is granted.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:      March  30 , 2010
            Rochester, New York